UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------------X
HOLLY SHARA, individually and on behalf of all others
similarly situated,

                                                      CIVIL ACTION NO. **3:23-cv-135 (LEK/ML)**

                            Plaintiff,

                                                     COMPLAINT

       -against-

BINGHAMTON PRECAST & SUPPLY CORP. and
JAY ABBEY,

                            Defendants.
---------------------------------------------------------------------------X

       Plaintiff Holly Shara, individually and on behalf of all others similarly situated, complaining of the defendants, Binghamton Precast & Supply Corp. and Jay Abbey, respectfully alleges as follows:

### I. Nature of Action, Jurisdiction, and Venue

       1.     This is an action seeking equitable and legal relief for Defendants' violations of the Equal Pay Act ("EPA"), § 206(d) *et seq.* of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"); the New York Equal Pay Act ("NYEPA"), §§ 194 and 198 of the New York Labor Law ("NYLL"); and the New York State Human Rights Law, N.Y. Executive Law § 290 *et seq.* ("NYSHRL").

       2.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331, in that this is an action arising under the EPA.

       3.     This Court has supplemental jurisdiction over the claims arising under New York state law pursuant to 28 U.S.C. § 1367, in that the New York state law claims are so closely related to Plaintiff's federal claims as to form the same case or controversy under Article III of the United States Constitution.

4. Venue is proper in this judicial district under 28 U.S.C. § 1391, as a substantial part of the events and omissions giving rise to the claims occurred in this judicial district, and Defendants conduct business through their employees, including Plaintiff, within this judicial district.

## II. Parties

5. Plaintiff is an individual residing in the State of New York.

6. Binghamton Precast is a domestic corporation with its principal place of business located at 18 Phelps Street, Binghamton, New York 13901.

7. Binghamton Precast is a manufacturer of precast concrete products to the heavy highway and general construction industry.

8. Abbey is an individual residing, upon information and belief, in the State of New York.

9. At all relevant times, Abbey was and remains an owner, manager, and/or person in control of Binghamton Precast, who exercises significant control over the company's operations and has the authority to hire, fire, and discipline employees, set employees' work schedules and conditions of employment, determine the rates and methods of payment for employees, and maintain employment records.

10. At all relevant times, Abbey was responsible for setting Plaintiff's schedule and day-to-day activities, and for supervising her performance.

11. At all relevant times, Abbey had the power to discipline and terminate Plaintiff.

12. At all relevant times, Abbey was responsible for compensating Plaintiff.

13. Defendants are employers within the meaning of the FLSA, the NYLL, and the NYSHRL and, at all relevant times, employed Plaintiff.

14. At all relevant times, Plaintiff was a covered employee within the meaning of the FLSA, NYLL, AND NYSHRL.

15. Upon information and belief, at all relevant times, Defendants' gross revenues were in excess of $500,000.00 per year.

16. Defendants operate in interstate commerce.

17. Defendants are subject to suit under the statutes alleged above.

### III. EPA Collective Action Allegations

18. The First Cause of Action in this Complaint, which arises out of the EPA, is brought by Plaintiff on behalf of herself and similarly situated persons who were employed since the date three (3) years prior to the filing of this Complaint and who elect to opt-in to this action (the "EPA Collective Plaintiffs").

19. The EPA Collective Plaintiffs consist of no less than five (5) similarly situated employees employed by Defendants, who are victims of Defendants' common policies and practices that have violated their rights under the EPA by, *inter alia*, willfully failing to pay them equal pay for equal work when compared to their male colleagues who were employed in the same or substantially similar roles.

20. As part of their regular business practices, Defendants intentionally, willfully, and repeatedly harmed Plaintiff and the EPA Collective Plaintiffs by engaging in a pattern, practice, and/or policy of violating the EPA. This policy and pattern or practice includes, *inter alia*, failing to pay female employees equal pay for equal work when compared to their male colleagues.

21. Defendants have engaged in their unlawful conduct pursuant to a corporate policy of discrimination against female employees.

22. Defendants' unlawful conduct has been intentional, willful, and in bad faith, and has caused significant damages to Plaintiff and the EPA Collective Plaintiffs.

23. The EPA Collective Plaintiffs would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join the present lawsuit. Those similarly situated employees are known to Defendants, are readily identifiable, and are locatable through Defendants' records. These similarly situated employees should be notified of and allowed to opt-in to this action, pursuant to 29 U.S.C. § 216(b).

### IV. Factual Allegations

24. Plaintiff worked for Defendants from approximately 2000 until on or about November 12, 2021.

25. For the last 15 years of her employment, Plaintiff worked for Defendants as a Sales Estimator.

26. As a Sales Estimator, Plaintiff was responsible for, among other tasks, preparing and providing estimates for customers; making sales; requesting and submitting information on items; reviewing orders and forwarding orders to the engineering department; preparing invoices and purchase orders; and setting up deliveries.

27. Throughout her employment, Defendants paid Plaintiff significantly less, and awarded Plaintiff fewer and smaller raises, than her male counterparts and coworkers.

28. By way of example only, at a time when Plaintiff was paid $18.00 per hour, two male salespeople, Timothy Blair and Sean Dutcher, were paid $24.50 per hour and $27.50 per hour, respectively.

29.     Blair and Dutcher worked alongside Plaintiff in the sales office and had the same roles and responsibilities as Plaintiff, required the same skills to carry out their job duties, and were supervised by the same person.

30.     However, Plaintiff had significantly more experience (over 10 years) than Blair and Dutcher (less than 2 years) and generated higher sales than either of her male colleagues.

31.     Despite Plaintiff's superior experience and performance, Defendants paid Plaintiff up to 50% less than her male coworkers in the sales office.

32.     Defendants did not have a bona fide justification for paying Plaintiff less than her male counterparts.

33.     Plaintiff's situation was not unique among Defendants' female employees.

34.     By way of example only, upon information and belief, Defendants paid one female estimator $17.30 per hour, which was substantially less male estimators employed by Defendants, and paid a newly hired male estimator with no experience a starting hourly rate of $24.50.

35.     Upon information and belief, estimators employed by Defendants had the same roles and responsibilities, required the same skills to carry out their job duties, and were supervised by the same person.

36.     Upon information and belief, Defendants did not have a bona fide justification for paying the female estimator less than her male counterparts.

37.     By way of example only, upon information and belief, when a female employee in the purchasing department who was making $18.00 per hour resigned, Defendants offered her replacement, a male employee with little to no relevant experience and who was to perform the exact same role, a starting rate of $20.00 per hour.

38. Upon information and belief, Defendants asked the female employee what it would take for her to stay in the role, and the female employee responded that she would stay if she received a raise to $20.00 per hour, the same hourly rate that Defendants offered to the male replacement who had little to no relevant experience.

39. Upon information and belief, Abbey denied the raise, telling the female employee that if he gave her a raise then Defendants would need to give a raise to "all the other girls in the office".

40. Upon information and belief, Defendants also provided male employees with significant annual or semi-annual raises and bonuses while providing female employees, including Plaintiff, with no or small bonuses and only modest cost-of-living adjustments to their regular rates of pay.

41. In or around May 2020, Plaintiff reviewed certain payroll records and discovered that she and her female colleagues were being paid substantially less than their male coworkers.

42. The disparities in the rates of pay between Defendants' male and female employees were not based on any objective criteria but merely reflected Defendants' preference to compensate men at higher rates of pay than their female counterparts.

43. After learning of the discrepancies between Plaintiff's rate of pay and those of her male colleagues, Plaintiff asked Abbey for a modest raise of $1 per hour. Abbey denied Plaintiff's request, repeating his demeaning, misogynistic, and blatantly discriminatory excuse that if Plaintiff received a raise, then Defendants would need to give a raise to "all the other girls in the office".

44. Approximately 6 months later, Plaintiff informed Kevin Balachik, Vice President of Binghamton Precast, that Plaintiff had reviewed Binghamton Precast's payroll records and therefore knew that she was being paid less than her male colleagues.

45. Plaintiff advised Balachik that she had approached Abbey to request a raise, which Abbey denied, and asked Balachik to speak with Abbey about increasing Plaintiff's hourly rate of pay.

46. After initially denying Plaintiff's request, Balachik told Plaintiff that he would see what he could do.

47. Balachik never responded to Plaintiff.

48. After Balachik failed to report back to Plaintiff, Plaintiff approached Abbey for a second time to request a raise.

49. Plaintiff reminded Abbey that Abbey knew that Plaintiff had reviewed Binghamton Precast's payroll records and was therefore aware of the disparities between her pay and that of her male colleagues, and that Plaintiff's performance justified a raise.

50. In response, Abbey became incensed and snapped that Plaintiff "made enough" and again denied her request for a raise.

51. On or around November 8, 2021, after Plaintiff had repeatedly requested a raise, John Sanford, Plaintiff's direct supervisor, overheard Plaintiff and a female coworker discussing the Lilly Ledbetter Fair Pay Act, which expanded the time frame under which individuals may bring claims against their employers for discriminatory pay practices.

52. Upon hearing this conversation, Mr. Sanford became visibly angry and yelled that Plaintiff was not entitled to anything more than what she was earning.

53. By the end of that week, on or about November 12, 2021, Defendants terminated Plaintiff's employment.

54. Defendants unlawfully terminated Plaintiff in retaliation for Plaintiff's repeated requests for raises to bring her rates of pay in line with her male colleagues, and for discussing her right to bring claims against Defendants for their discriminatory compensation practices.

55. Defendants' discriminatory and retaliatory conduct caused Plaintiff to suffer significant financial losses and emotional distress.

56. Defendants violated federal and state law by willfully failing to pay Plaintiff and her female coworkers equal pay for equal work when compared to Defendants' male employees, and by terminating Plaintiff in retaliation for engaging in protected activities.

### AS AND FOR A FIRST CAUSE OF ACTION ON BEHALF OF PLAINTIFF, INDIVIDUALLY, AND ON BEHALF OF THE EPA COLLECTIVE PLAINTIFFS
(Violations of the Federal Equal Pay Act)

57. Plaintiff, individually and on behalf of the EPA Collective Plaintiffs, repeats and realleges all prior allegations set forth above.

58. Plaintiff and the EPA Collective Plaintiffs were employed by Defendants alongside male employees who performed the same or substantially similar roles that required the same or substantially similar skill, effort, and responsibility, and that took place under similar working conditions.

59. Plaintiff and the EPA Collective Plaintiffs were paid lower wages than their male colleagues who performed the same or substantially similar roles and performed the same or substantially similar work.

60. Defendants willfully discriminated against Plaintiff and the EPA Collective Plaintiffs on the basis of sex by paying them lower wages for the same work as compared to their male counterparts.

8

61. As a result of Defendants' violations of the law, Plaintiff and the EPA Collective Plaintiffs have been damaged and are entitled to recover from Defendants all unpaid wages, liquidated damages, reasonable attorneys' fees, interest, and costs.

62. Judgment should be entered in favor of Plaintiff and the EPA Collective Plaintiffs and against Defendants on the First Cause of Action in the amount of their respective unpaid wages, liquidated damages, attorneys' fees, costs, interest, and such other legal and equitable relief as this Court deems just and proper.

**AS AND FOR A SECOND CAUSE OF ACTION ON BEHALF OF PLAINTIFF**
(Violations of the New York Equal Pay Act)

63. Plaintiff repeats and realleges all prior allegations set forth above.

64. Defendants discriminated against Plaintiff by paying Plaintiff at lower wage rates than Plaintiff's male colleagues, who performed the same or substantially similar work as Plaintiff based on the skills, effort, and responsibilities of their roles, which were performed under similar working conditions.

65. Defendants willfully discriminated against Plaintiff on the basis of sex by paying her at lower wage rates than her male counterparts for performing the same or substantially similar work under similar working conditions.

66. As a result of Defendants' violations of the law, Plaintiff has been damaged and is entitled to recover from Defendants all unpaid wages, liquidated damages, reasonable attorneys' fees, interest, and costs.

67. Judgment should be entered in favor of Plaintiff and against Defendants on the Second Cause of Action for all unpaid wages, liquidated damages, attorneys' fees, costs, interest, and such other legal and equitable relief as this Court deems just and proper.

**AS AND FOR A THIRD CAUSE OF ACTION ON BEHALF OF PLAINTIFF**
(New York State Executive Law, Human Rights Law, § 290 *et seq*.)
(Sex-Based Discrimination)

68. Plaintiff repeats and realleges all prior allegations set forth above.

69. Defendants' disparate and unlawful treatment of Plaintiff on the basis of her sex violated the NYSHRL.

70. Judgment should be entered in favor of Plaintiff and against Defendants on the Third Cause of Action for all compensatory, emotional, physical, and liquidated damages, along with lost pay, front pay, reasonable attorneys' fees, the costs and disbursements of this action, and any other damages permitted by law in an amount to be determined at trial.

**AS AND FOR A FOURTH CAUSE OF ACTION ON BEHALF OF PLAINTIFF**
(Retaliation Under the FLSA)

71. Plaintiff repeats and realleges all prior allegations.

72. In or around May 2020, Plaintiff learned that she was being paid significantly less than her male counterparts and requested a raise, which was denied.

73. Over the next 18 months, Plaintiff repeatedly requested a raise in order to bring her rate of pay more in line with those of her male counterparts, which Defendants repeatedly denied.

74. On or around November 8, 2021, Plaintiff's supervisor overheard Plaintiff discussing the Ledbetter Fair Pay Act with a coworker and yelled at Plaintiff that she was not entitled to anything more than what she was earning.

75. Defendants terminated Plaintiff by the end of that week.

76. Defendants retaliated against Plaintiff by terminating her employment in response to Plaintiff's repeated efforts to earn equal pay for equal work when compared to her male colleagues and her assertion of her legal rights under the EPA.

77. Defendants' termination of Plaintiff's employment constitutes unlawful retaliation in violation of 29 U.S.C. § 215(a)(3).

78. As a result of Defendants' violations of the law, Plaintiff has been damaged and is entitled to recover from Defendants punitive damages, if applicable, along with lost wages, front pay, liquidated damages, reasonable attorneys' fees, and costs.

79. Judgment should be entered in favor of Plaintiff and against Defendants on the Fourth Cause of Action for punitive damages, if applicable, lost wages, front pay, liquidated damages, reasonable attorneys' fees, costs, interest, and such other legal and equitable relief as this Court deems just and proper.

### **AS AND FOR A FIFTH CAUSE OF ACTION ON BEHALF OF PLAINTIFF**
(Retaliation Under the NYLL)

80. Plaintiff repeats and realleges all prior allegations.

81. In or around May 2020, Plaintiff learned that she was being paid significantly less than her male counterparts and requested a raise, which was denied.

82. Over the next 18 months, Plaintiff repeatedly requested a raise in order to bring her rate of pay more in line with those of her male counterparts, which Defendants repeatedly denied.

83. On or around November 8, 2021, Plaintiff's supervisor overheard Plaintiff discussing the Ledbetter Fair Pay Act with a coworker and yelled at Plaintiff that she was not entitled to anything more than what she was earning.

84. Defendants terminated Plaintiff by the end of that week.

85. Defendants retaliated against Plaintiff by terminating her employment in response to Plaintiff's repeated efforts to earn equal pay for equal work when compared to her male colleagues and her assertion of her legal rights under the NYEPA.

86. Defendants' termination of Plaintiff's employment constitutes unlawful retaliation in violation of NYLL § 215.

87. As a result of Defendants' violations of the law, Plaintiff has been damaged and is entitled to recover from Defendants punitive damages, if applicable, along with lost wages, front pay, liquidated damages, reasonable attorneys' fees, and costs.

88. Judgment should be entered in favor of Plaintiff and against Defendants on the Fifth Cause of Action for punitive damages, if applicable, lost wages, front pay, liquidated damages, reasonable attorneys' fees, costs, interest, and such other legal and equitable relief as this Court deems just and proper.

**AS AND FOR A SIXTH CAUSE OF ACTION ON BEHALF OF PLAINTIFF**
(New York State Executive Law, Human Rights Law, § 290 *et seq.*)
(Retaliation)

89. Plaintiff repeats and realleges all prior allegations set forth above.

90. Plaintiff was subjected to adverse employment actions, including but not limited to the termination of her employment with Defendants, and these actions were retaliatory and taken in response to Plaintiff's engagement in protected opposition to unlawful discriminatory acts, including but not limited to her opposition to Defendants' discriminatory pay practices.

91. As a proximate result of Defendants' retaliation against Plaintiff, Plaintiff has suffered and continues to suffer substantial losses, including the loss of past and future earnings, and other employment benefits.

92. As a further proximate result of Defendants' actions, Plaintiff has suffered and continues to suffer lasting embarrassment, humiliation, anguish, and other incidental and consequential damages and expenses.

93. After being subjected to sex-based discrimination and gender-based discrimination, and engaging in protected opposition to the aforementioned unlawful acts, Plaintiff was retaliated against and subjected to adverse employment action by Defendants.

94. Defendants' retaliatory treatment of Plaintiff was in violation of the NYSHRL.

95. Judgment should be entered in favor of Plaintiff and against Defendants on the Sixth Cause of Action for all compensatory, emotional, physical, and liquidated damages, along with lost pay, front pay, reasonable attorneys' fees, the costs and disbursements of this action, and any other damages permitted by law in an amount to be determined at trial.

**WHEREFORE** Plaintiff prays for relief as follows:

a) on the First Cause of Action for all unpaid wages due to Plaintiff and the EPA Collective Plaintiffs, liquidated damages, and reasonable attorneys' fees in an amount to be determined by this Court;

b) on the Second Cause of Action for all unpaid wages due, liquidated damages, and reasonable attorneys' fees in an amount to be determined by this Court;

c) on the Third Cause of Action for all compensatory, emotional, physical, and liquidated damages, along with lost pay, front pay, and reasonable attorneys' fees in an amount to be determined by this Court;

d) on the Fourth Cause of Action for all punitive damages, if applicable, lost wages, front pay, liquidated damages, and reasonable attorneys' fees in an amount to be determined by this Court;

e) on the Fifth Cause of Action for all punitive damages, if applicable, lost wages, front pay, liquidated damages, and reasonable attorneys' fees in an amount to be determined by this Court;

    f) on the Sixth Cause of Action for all compensatory, emotional, physical, and liquidated damages, along with lost pay, front pay, and reasonable attorneys' fees in an amount to be determined by this Court;

    g) Interest;

    h) Costs and disbursements; and

    i) Such other and further relief as the Court deems just and proper

Dated: New York, New York
       January 30, 2023

*/s/ Kenneth Katz*
Kenneth Katz
Katz Melinger PLLC
370 Lexington Avenue, Suite 1512
New York, New York 10017
T: (212) 460-0047
F: (212) 428-6811
kjkatz@katzmelinger.com
*Attorneys for Plaintiff*