UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

HOLLY SHARA, individually and on behalf of all others similarly situated,

Plaintiff,

-against- 3:23-CV-00135 (LEK/ML)

BINGHAMTON PRECAST & SUPPLY CORP. and JAY ABBEY,

Defendants.

# MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

Plaintiff Holly Shara, individually and on behalf of all others similarly situated, commenced this action against Defendants Binghamton Precast & Supply Corp. ("BPS") and Jay Abbey on January 30, 2023. *See* Dkt. No. 1 ("Complaint"). Plaintiff brings claims against Defendants for violations of the Equal Pay Act ("EPA") and the New York Equal Pay Act ("NYEPA"), as well as claims of sex-based discrimination and retaliation under the New York State Human Rights Law ("NYSHRL"), and retaliation under the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"). *See generally* Compl. Defendants filed an answer to the Complaint. *See* Dkt. No. 7 ("Answer").

Defendants now move for summary judgment. *See* Dkt. No. 87 ("Motion"). Plaintiff filed a response, *see* Dkt. No. 90 ("Response"), and Defendants filed a reply, *see* Dkt. No. 95 ("Reply"). For the reasons that follow, the Court grants Defendants' Motion.

## II. BACKGROUND

The following facts are undisputed, except where otherwise noted.

Plaintiff worked for Defendants at BPS from 2000 until November 12, 2021. *See* Dkt. No. 87-22 ("Defendants' Statement of Material Facts" or "DSMF") ¶¶ 1–2; Dkt. No. 87-16 ("Shara Tr.") at 21; *see also* Dkt. No. 87-1 ("Abbey Dec.") ¶ 4.

At BPS, employees are required to use certain proprietary software programs in order to create estimates for various products, including programs such as "ET Culvert," "ArchCulvert," "DP Vault," "BPS Standard Manhour Calculator," "Recon Estimator," and "Recon Wall." *See* DSMF ¶¶ 17–25; Abbey Dec. ¶¶ 18–26. Defendants state that BPS employees need these programs in order to create "detailed, complex estimates," that BPS employees creating estimates must also "be able to perform simple and complex math, geometry, and trigonometry," and that use of ET Culvert typically requires an engineering background. DSMF ¶¶ 19, 25–26; Abbey Dec. ¶¶ 20, 26–27.[1] Male BPS employees Anthony Ferranti, Sean Dutcher, Tim Blair, John Sanford, and Steve Knickerbocker (collectively, the "Comparators") used these programs or related programs, along with simple and complex math skills, to create estimates. *See* DSMF ¶¶ 11, 27–28; Abbey Dec. ¶¶ 28–29.

Plaintiff lacked prior relevant experience with concrete or precast work before 2000, and attended community college for one semester. *See* DSMF ¶ 3; Shara Tr. at 19–21. Plaintiff possessed a high school diploma, while Blair and Dutcher possessed associate and bachelor's degrees, respectively, in civil engineering. *See* DSMF ¶ 30; Dkt. No. 87-2 ("Ex. A to Abbey Dec."); Dkt. No. 87-3 ("Ex. B to Abbey Dec."). Ferranti had a degree in construction technology,

[1] Plaintiff disputes these statements but fails to properly "set forth a specific citation to the record where the factual issue arise[s]" in accordance with the Local Rules. N.D.N.Y. L.R. 56.1(b); *see* RDSMF. Accordingly, the Court deems such statements admitted. The Court likewise deems admitted such statements that are similarly disputed with insufficient record citations, those being Defendants' Statement of Material Facts ¶¶ 15, 28, 33, 46–47, 57–58, 60–64, 67–68.

and Knickerbocker completed three full years of college. *See* DSMF ¶¶ 32, 34; Abbey Dec. ¶¶ 36, 38.

In her role, Plaintiff "perform[ed] basic quotes for products that were primarily resale items or stock items that needed little or no customization." DSMF ¶ 12; Abbey Dec. ¶ 7. Plaintiff applied for and was hired as a sales assistant, while Dutcher and Blair applied to be estimators at BPS while they were new employees. *See* DSMF ¶ 31; Abbey Dec. ¶ 35. Ferranti was hired as an estimator, and Knickerbocker had twenty years of experience in concrete and precast before joining BPS. *See* DSMF ¶¶ 32, 35–37; Abbey Dec. ¶¶ 36, 40–41. Sanford was employed by BPS approximately sixteen years before Plaintiff was hired, worked as the lead estimator and salesperson, developed pricing and estimating standards, and provided training for Plaintiff. *See* DSMF ¶¶ 39–42; Abbey Dec. ¶¶ 43–46; Dkt. No. 90-17 ("Response to Defendants' Statement of Material Facts" or "RDSMF") ¶ 42. Plaintiff accordingly lacked the educational experience of Blaire, Dutcher, and Ferranti, and the work experience of Sanford and Knickerbocker. *See* DSMF ¶¶ 44–45; Abbey Dec. ¶¶ 49–50.

Plaintiff was paid less than the Comparators. *See* DSMF ¶ 11. Defendants state that Plaintiff's rate of pay was lower than the Comparators due to "differences in skills, experience, education, and job duties," and that Plaintiff's and the Comparators' "sex and gender played absolutely no role" in their rates of pay. DSMF ¶ 46; Abbey Dec. ¶ 51. Defendants further state that "[a]ll rates of pay were determined by skills, experience, labor market, educational background, and the position the individual applied for and was hired for." DSMF ¶ 47; Abbey Dec. ¶ 52.[2]

---

[2] Plaintiff disputes these statements, but as discussed above, fails to include specific cites to the record where the factual disputes arise. *See* RDSMF ¶¶ 46–47.

Plaintiff asked Abbey for a raise at least three times over the course of eighteen months, while "frequently claim[ing] females were paid less than male counterparts," and at one point received a raise. *See* DSMF ¶¶ 52–53; Abbey Dec. ¶¶ 65–66. Plaintiff has said that she was "yelled at" for working overtime and "was told to limit" her overtime. DSMF ¶¶ 65–66; Shara Tr. at 167. Defendants state that Plaintiff was terminated from her position for "working excessive overtime," DSMF ¶ 7, though Plaintiff disputes this and claims she was terminated because "she was complaining about being paid less than men," RDSMF ¶ 7. Defendants further state that Plaintiff's "significant amounts of overtime" was an "unanticipated expense for the Company," and she was terminated "due to her continuing to work overtime after multiple warnings" of "termination if she continued to work overtime without prior authorization." DSMF ¶¶ 58, 60–62; Abbey Dec. ¶¶ 53–56.[3]

## III. LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure instruct courts to grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law," and a dispute is "'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, while "[f]actual disputes that are irrelevant or unnecessary" will not preclude summary judgment, granting summary judgment is improper if there are genuinely disputed material facts. *Id.*; *see also Taggart v. Time, Inc.*, 924 F.2d 43, 46 (2d Cir. 1991) ("Only when no reasonable trier of facts could find in favor of the nonmoving

[3] Plaintiff disputes these statements, but as discussed above, fails to include specific cites to the record where the factual disputes arise. *See* RDSMF ¶¶ 58, 60–62.

party should summary judgment be granted."). The party seeking summary judgment bears the burden of informing a court of the basis for the motion and identifying those portions of the record that the moving party claims will demonstrate the absence of a genuine dispute of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

In attempting to defeat a motion for summary judgment after the moving party has met its initial burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party may not rely on "mere conclusory allegations, speculation, or conjecture," *Fischer v. Forrest*, 968 F.3d 216, 221 (2d Cir. 2020) (quoting *Cifarelli v. Village of Babylon*, 93 F.3d 47, 51 (2d Cir. 1996)), and must present more than a mere "scintilla of evidence" supporting its claims, *Anderson*, 477 U.S. at 252. At the same time, a court must resolve all ambiguities and "draw all reasonable inferences in favor of the nonmoving party," *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000), and "eschew credibility assessments," *Amnesty Am. V. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (quoting *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996)). Thus, a court's duty in reviewing a motion for summary judgment is "carefully limited" to finding genuine disputes of fact, "not to deciding them." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994).

## IV. DISCUSSION

Defendants aver that they should be granted summary judgment on Plaintiff's claims of sex-based discrimination and retaliation under state and federal law. *See* Mot. The Court will handle each issue in turn.

**A. Discrimination**

Plaintiff claims that Defendants violated the EPA, NYEPA, and NYSHRL through their sex-based discrimination. *See* Compl. ¶¶ 57–70. The parties are generally in agreement on what the law requires of Plaintiff in order to make out her equal pay claims. *See* Mot. at 2–4; Resp. at 1.[4] That is, under the EPA's burden-shifting framework, Plaintiff must first show that: "i) the employer pays different wages to employees of the opposite sex; ii) the employees perform equal work on jobs requiring equal skill, effort, and responsibility; and iii) the jobs are performed under similar working conditions." *Eisenhauer v. Culinary Inst. of Am.*, 84 F.4th 507, 523 (2d Cir. 2023) (quoting *Belfi v. Prendergast*, 191 F.3d 129, 135 (2d Cir. 1999)); *see* 29 U.S.C. § 206(d)(1).

If Plaintiff establishes a prima facie case, the burden shifts to Defendants "to show that one of the EPA's affirmative defenses justifies the pay disparity." *Eisenhauer*, 84 F.4th at 523. Those defenses include justification of the wage disparity as a result of: "(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on *any other factor other than sex*." *Id.* at 515 (quoting 29 U.S.C. § 206(d)(1)) (emphasis in original). Plaintiff may then "counter the employer's affirmative defense by producing evidence that the reasons the defendant seeks to advance are actually a pretext for sex discrimination." *Ryduchowski v. Port Auth. of New York & New Jersey*, 203 F.3d 135, 142 (2d Cir. 2000) (quoting *Belfi*, 191 F.3d at 136).

As to the state law claims, NYSHRL claims are "generally analyzed under the same standards used in an EPA claim." *Zimpfer v. Hilbert Coll.*, 788 F. Supp. 3d 520, 545 (W.D.N.Y. 2025) (quoting *Lenzi v. Systemax, Inc.*, 944 F.3d 97, 109 (2d Cir. 2019)). NYEPA claims differ

[4] Page number citations refer to the pagination provided in the footer of the parties' filings.

from the EPA in that the NYEPA's fourth affirmative defense requires Defendants to show "that the pay disparity in question results from a differential based on a job-related factor." *Eisenhauer*, 84 F.4th at 515; *see* N.Y. Lab. Law § 194(1).

Here, Defendants concede that Plaintiff was paid less than the male employees, whom she identified as Comparators, under similar working conditions, satisfying the first and third elements of the EPA claim. *See* Mot. at 4. However, Defendants disagree on the second prong, arguing that "Plaintiff did not perform equal work on jobs requiring equal skill, effort, and responsibility" as the Comparators. *See id.* at 5.

The Court agrees with Defendants. Even in the light most favorable to Plaintiff, she has failed to demonstrate that she performed work equal to the male Comparators. Plaintiff claims that she "work[ed] side-by-side with men estimating the cost of various products offered by BPS with gender being the only distinguishing feature to account for the differential in salaries." Resp. at 1. However, the admitted facts show that Plaintiff was hired as a sales assistant, while the Comparators who worked as estimators were required to use certain proprietary software programs in order to create estimates for products. *See* DSMF ¶¶ 17–24, 31; Abbey Dec. ¶¶ 18–25, 35. One such software program typically required an engineering background, which Plaintiff did not possess. *See* DSMF ¶¶ 19, 25–26, 30; Abbey Dec. ¶¶ 20, 26–27, 34. Plaintiff also did not properly dispute the statement that her rate of pay was lower than the Comparators due to "differences in skills, experience, education, and job duties." DSMF ¶ 46; Abbey Dec. ¶ 51; *see* RDSMF ¶ 46.

Further, even if Plaintiff met her burden to show that she performed equal work, the Court finds that Defendants satisfied at least the fourth affirmative defense (under both the EPA and the more demanding NYEPA). The admitted facts show that Plaintiff lacked either

educational experience or work experience as compared to the Comparators. *See* DSMF ¶¶ 44–45; Abbey Dec. ¶¶ 49–50. Plaintiff also did not properly dispute the statement that "[a]ll rates of pay were determined by skills, experience, labor market, educational background, and the position the individual applied for and was hired for," DSMF ¶ 47; Abbey Dec. ¶ 52; *see* RDSMF ¶ 47. The Court is satisfied therefore that Defendants have sufficiently indicated that a job-related factor accounts for such pay disparities (let alone a factor other than sex, pursuant to the EPA). *See Eisenhauer*, 84 F.4th at 515.

Finally, Plaintiff fails to adequately counter this defense by demonstrating that Defendants' reasons "are actually a pretext for sex discrimination." *Ryduchowski*, 203 F.3d at 142 (quoting *Belfi*, 191 F.3d at 136). Indeed, Plaintiff contends that Defendants' statements about the Comparators' "educational experience and skills" are "pretextual," but such contentions by Plaintiff appear conclusory and unsupported by the record. Resp. at 1–2; *see Fischer*, 968 F.3d at 221 ("[M]ere conclusory allegations, speculation or conjecture will not avail a party resisting summary judgment." (quoting *Cifarelli*, 93 F.3d at 51)). Therefore, the Court grants Defendants' motion for summary judgment as to Plaintiff's discrimination claims under federal and state law.

**B. Retaliation**

Plaintiff also claims that Defendants violated the FLSA, NYLL, and NYSHRL through their termination of her employment in response to her efforts to earn equal pay and assertion of her legal rights. *See* Compl. ¶¶ 71–95. Courts analyze retaliation claims under the FLSA according to the burden-shifting framework provided by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

Regarding the state law claims, "[t]he same standard applies" to NYLL and NYSHRL claims, and their antiretaliation provisions are "nearly identical" to those of the FLSA. *Zimpfer*, 788 F. Supp. 3d at 546 (citing *Centeno-Bernuy v. Perry*, No. 03-CV-457, 2009 WL 2424380, at *8 (W.D.N.Y. Aug. 5, 2009); *Jones v. Pawar Bros. Corp.*, 434 F. Supp. 3d 14, 27 (E.D.N.Y. 2020)). The Court therefore considers all of Plaintiff's retaliation claims under the same *McDonnell Douglas* burden-shifting framework.

Under *McDonnell Douglas*, a plaintiff must demonstrate "(1) participation in protected activity known to the defendant . . . ; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action." *Robinson v. De Niro*, 739 F. Supp. 3d 33, 75 (S.D.N.Y. 2023) (quoting *Mullins v. City of New York*, 626 F.3d 47, 53 (2d Cir. 2010)). Defendants accept *arguendo* that Plaintiff "engaged in protected activity by discussing wages" and "suffered an adverse employment action," thereby satisfying the first and second prongs of the burden-shifting framework. Mot. at 12. As to the third element, Defendants argue that Plaintiff has failed to "establish[] a causal connection between the protected activity and the adverse employment action." *Id.*

The Court agrees that there is a clear lack of evidentiary support needed to establish a causal connection between Plaintiff's protected activity and her termination. The admitted facts instead point primarily to the conclusion that Plaintiff was terminated for working excessive amounts of overtime without authorization. *See* DSMF ¶¶ 52–53, 58, 60–62, 65–66; Abbey Dec. ¶¶ 53–56, 65–66; Shara Tr. at 167.

Plaintiff has stated her belief that she was terminated because she complained about pay inequality. *See* RDSMF ¶ 7; Shara Tr. at 145. However, Plaintiff has not cited to evidence demonstrating such a causal connection to her termination. *See generally* RDSMF. Plaintiff did,

however, admit that she was told to limit her overtime, and failed to properly dispute the statement that "she would be subject to termination if she continued to work overtime without prior authorization." DSMF ¶¶ 62, 65–66; RDSMF ¶¶ 62, 65–66. Furthermore, Plaintiff does not address the retaliation claims at all in her opposition to Defendants' Motion. *See generally* Resp. Therefore, the Court grants Defendants' motion for summary judgment as to Plaintiff's retaliation claims under federal and state law.

## V. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendants' motion for summary judgment, Dkt. No. 87, is **GRANTED**; and it is further

**ORDERED**, that Plaintiff's complaint, Dkt. No. 1, is **DISMISSED with prejudice**; and it is further

**ORDERED**, that the Clerk is respectfully directed to close this action; and it is further

**ORDERED**, that the Clerk serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED: September 21, 2026
Albany, New York

LAWRENCE E. KAHN
United States District Judge